## WILLIAM H. HOPKINS *et al. vs.* EMILY J. LADD *et als.*
## OLD NATIONAL BANK *vs.* SAME.

May 11, 1875, letters of administration were granted on the estate of M. July 18, 1878, the realty of M. was aliened by his heirs. The personalty of M. proving insufficient to pay his debts, his creditors, in August and September, 1878, brought actions against his heirs, and served their writs both by summons and by attaching the realty formerly owned by M. and aliened by his heirs.

*Held*, under Gen. Stat. R. I. cap. 178, §§ 1, 2, 14–20, that the attachments were invalid.

*Held*, further, that the defendant heirs were liable for the value of the realty aliened by them.

Liability of the realty of a decedent in Rhode Island for his debts, and outline of the legislation affecting this liability.

CASE against the defendants as heirs of one Joseph Martin. Heard by the court, jury trial being waived.

The writs in these cases ordered the attachment of the real estate whereof Joseph Martin died seised, and directed the officer to summon the defendants as his heirs at law to answer the complaints of the plaintiffs, " for that the said Joseph Martin, deceased, in his lifetime was justly indebted to the plaintiffs in a large sum, which neither he in his lifetime nor his administrator or executor have since his decease paid, the personal estate of said deceased being insufficient for the payment of said deceased's debts, funeral expenses, and expenses of supporting his family and settling his estate."

The declarations contained counts on promissory notes made by Martin, and on indorsements also made by him. Letters of administration on Martin's estate were granted May 11, 1875.

The realty inherited from Martin was aliened by his heirs, the defendants, July 18, 1878.

The attachments in these cases were respectively made August 26, 1878, and September 17, 1878.

The cases came before the court on the validity of these attachments.

Gen. Stat. R. I. cap. 178, contains the following provisions:

"SECTION. 1. The estate of every deceased person shall be chargeable with the expenses of administering the same, the funeral charges of the deceased, and with the payment of his just debts ; and the same shall be paid by the executor or administrator of the estate out of the same, if, and so far as, sufficient therefor.

" SEC. 2. The personal estate shall stand chargeable for such expenses, charges, and debts, in the first instance, and the real estate for all the same which the personal estate shall be insufficient to satisfy, unless the deceased has otherwise directed by his last will and testament."

" SEC. 14. No heir or devisee of any deceased person shall have power, within three years and six months after the probate of the will, or grant of administration on the estate of such person, to encumber or aliene the real estate of the deceased, so as to prevent or affect the sale thereof by the executor or administrator, if necessary, as prescribed by law : *Provided*, that after the expiration of three years and six months, the heir or devisee may aliene or encumber the same, and the same shall not be liable for the debts of the deceased in the hands of the purchaser thereof, or of any other person.

" SEC. 15. The liability of the real estate of deceased persons for the payment of their just debts may be enforced by actions of the case, to be brought against the heirs at law or devisees of such estate : *Provided*, the personal estate of the testator or intestate be insufficient for the payment of his debts, funeral charges, and expenses of supporting his family and settling his estate.

" SEC. 16. Such action shall be brought against all the heirs and devisees who took such estate by devise or descent from the testator or intestate, if to be found in person or estate.

" SEC. 17. The writ in such action shall be served by attach-

ing such real estate in the first instance, by process of summons and attachment, if such estate has not been aliened by such heir or devisee; and in case of alienation, shall be in form and served as writs in other cases.

"SEC. 18. The execution in such action shall be served upon, and the debt and costs levied and collected out of, the estate received from the testator or intestate by the several heirs or devisees, in the same proportion that they hold the same, if such real estate remain unaliened, and it can be conveniently so done; and in case it be levied in any other proportion, the parties aggrieved thereby shall be entitled to a joint or several action against any person or persons in arrears, to recover such arrearages, with costs."

"SEC. 20. If the heir or devisee of any such real estate shall aliene any such estate, before the same shall be attached for the debt of the testator or intestate, such heir or devisee shall be liable to pay the value of the estate so aliened to the creditor of the testator or intestate, to be ascertained by a court or jury, who shall assess the damages in the suit that may be brought against such heir or devisee as aforesaid; and the execution in such case shall be served upon the heir or devisee who shall have aliened as aforesaid, or shall be levied on his estate, in manner prescribed by law for his own proper debt."

*February* 22, 1879. POTTER, J. The defendants are summoned as heirs of Joseph Martin, deceased. They took certain real estate as his heirs, which they aliened by deed after the expiration of three years, but within three and one half years from the time of the issue of letters of administration on his estate. The land is attached in this suit for a debt of said deceased, but the attachment was subsequent to the alienation. The case comes before the court by waiver of jury trial. It is admitted that the personal estate of the deceased is insufficient to pay his debts.

It is contended by the defendants that the action is not rightly brought; that if brought after alienation it should be under Gen. Stat. R. I. cap. 178, § 20, against the heirs for the value of the land and not against the land itself.

By the old common law land was not liable for the simple contract debts of the ancestor. Indeed it was only gradually and

by successive steps that it was made liable for debts at all.   Our Code of 1647, under the first patent, did indeed provide that a person's goods, lands, or debts might be seized for the payment of his debts.   Whether this was ever in force generally does not appear.   By act of parliament 5 Geo. II. cap. 7, § 4, A. D. 1732, lands in the colonies were made liable and chargeable for debts in the same manner as lands in England were liable for specialty debts, and with like remedies as in case of personal estate.   Debts could therefore under this be enforced against the heir.[1]

While specialties in England bound the lands in the hands of the heir, yet if the heir aliened before suit the remedy was lost. The statute 3 William & Mary, cap. 14, A. D. 1691, see also 6 William III. cap. 14, provided as a partial remedy that the heir or devisee should in such case be liable to the value of the land sold, as for his own debt.

And there was this difference between an execution against a person for his own debt and against an heir for debts of his ancestor.   The plaintiff on execution against one for his own debt could only, except in debts by statutes merchant and staple and the king's debts, have execution by *elegit* against a moiety of the land to hold until the rents paid his debt.   But for the debt of the ancestor he could have execution against the heir *for the land itself.*   For the personal property had gone to the executor, and he could not take the body of the heir except when he had aliened.   *Harbert's case*, 3 Rep. 11 ; *Davy* v. *Pepys*, Plowden, 441 ; 3 Blackstone Comm. 419, and see Tucker's note ; Bacon's Abridg. Heir and Ancestor, F. ; 1 Lead. Cas. Equity, 4th Amer. ed. 360, 367 ; Hare & Wallace, notes ; *Spackman* v. *Timbrell*, 8 Sim. 253.

The Act of February, 1769–70, introduced language as to making lands chargeable with the debts of the deceased by action against the heir or devisee which was substantially followed, but

---

[1] But yet we find in our laws an act of June, 1736, repealing an act of October, 1729, on the ground that it destroyed the nature of specialties.   The system of attaching real estate when neither the body nor any personal estate of the defendant was to be found in the State, which was so long the only case in which real estate could be attached, was introduced by an act of October, 1736.   It originated in England from the Act of 34 Henry VIII. cap. 4, A. D. 1542–3.

with provisions more in detail in the revision of A. D. 1798. The provisions of 1798 were copied in the revision of A. D. 1822, in that of A. D. 1844, in that of A. D. 1857, and are incorporated in Gen. Stat. R. I. cap. 178, §§ 1, 15 seq. now in force.

Cap. 178, § 1, declares the general liability of the deceased's estate ; § 2, that the land shall be liable after the personal estate is exhausted ; § 15, that the liability may be enforced by suit against the heir ; § 17, that the writ shall be served by attaching the real estate if not aliened, and if aliened, then by writ as in other cases ; § 18, that the execution is to be collected out of the estates received by the heirs in the proportion in which they would have held the same if not aliened ; § 20, that if the heir or devisee alienes before attachment he is liable to the value of the estate aliened, and execution is to be levied on his estate as for his own proper debt.

By § 22, no suit can be brought against the heir, &c., within three years. The legislature intended to make this provision strong, as they have enacted it, as also in some other cases, in two distinct places in the revision. There is no other limitation as to suits against heirs than this, excepting the general provisions as to all actions.

So far the provisions are plain enough and would leave the law substantially as the English Act of 3 & 4 William & Mary, cap. 14, left it as to specialties ; *i. e.* the land was chargeable until alienated, but the heir might aliene at any time, and after that he was only liable to the value of the land as for his own debt.

But in 1822, Digest 1822, p. 224, another provision was inserted in the statute, which is as follows :

" Nor shall the heir or devisee, within three years and six months after the probate of the will or administration granted, encumber or aliene said estate, but the same may be sold by the executor or administrator, if necessary, as prescribed in the twenty-seventh section of this act: *provided, however,* that after the expiration of said three years and six months, the heir or the devisee may aliene, and the same shall not be liable for the debts of the deceased, in the hands of the purchaser thereof, or any other person."

And this section is also in the Digest of 1844, p. 239.

This language seems sufficiently plain, and must be taken to

mean that a deed by the heir made by the heir before the time specified would be void as to creditors. This we believe was the general understanding of the profession. And there was nothing in it necessarily inconsistent with the provisions of the present § 20, if we construe § 20 to refer to alienations made after the three years and six months, as the heir might still be sued, there being no limitation of any suit against him as heir.

But in the Digest of 1857, Revised Stat. R. I. cap. 161, § 14, this provision was altered so as to read : " No heir or devisee of any deceased person shall have power, within three years and six months after the probate of the will or grant of administration on the estate of such person, to encumber or aliene the real estate of the deceased so as to prevent or affect the sale thereof by the executor or administrator, if necessary, as prescribed by law : *provided*, that after the expiration of three years and six months, the heir or devisee may aliene or encumber the same, and the same shall not be liable for the debts of the deceased in the hands of the purchaser thereof, or of any other person."

The change in the language must be taken to mean that the prohibition of alienation is intended to protect only the rights and powers of the executor or administrator to sell the estates if needed for debt ; but that as to suits against the heirs they are to be left as they stood before 1822, *i. e.* they may aliene, but if they do are to be liable for the value of the land.

It follows therefore that in this case the land having been sold is not liable to attachment for the debt of the ancestor ; but if the writ and declaration are otherwise good, the suit may proceed against the heirs for the value of the land under Gen. Stat. R. I. cap. 178, § 20.

*Browne & Van Slyck,* for plaintiffs.
*Colwell & Colt,* for defendants.